# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **J.P.-1**

**No. 17-0021** (Calhoun County 16-JA-16)

**FILED**

**May 22, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.P.-2, by counsel Andrew S. Ryan, appeals the Circuit Court of Calhoun County's December 8, 2016, order terminating his parental rights to J.P.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Tony Morgan, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating the child as neglected.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2016, the DHHR filed an abuse and neglect petition against the parents that alleged domestic violence and deplorable living conditions in the home. According to the petition, the parents' home was in such a condition as to "def[y] description." As of the DHHR's last visit to the home, the floors were covered with dog feces, filth, and other clutter so thick that a caseworker refused to complete the walkthrough. It was also indicated that gnats in the home were so prevalent that "they appeared as black clouds in every direction." This home visit was conducted during a prior abuse and neglect proceeding involving the parents based upon the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner share the same initials, the Court will refer to them as J.P.-1 and J.P.-2, respectively, throughout this memorandum decision.

[2]The circuit court actually found that the parents "abused and neglected" the child. As such, petitioner's assignment of error more accurately alleges that the circuit court erred in finding the child was abused and neglected. However, as more thoroughly explained below, the Court affirms the circuit court's adjudication based solely on a finding of neglect. Accordingly, the Court will not address any findings of abuse below.

1

same allegations. That proceeding resulted in the parents voluntarily relinquishing their parental rights to an older child in August of 2015. According to the petition in this matter, the parents were previously instructed that if they ever hoped to have children in the future and live in their current dwelling, they would have to make their home habitable, as both parents refused to move from the home. Accordingly, the DHHR alleged that the parents took no steps to remedy the conditions of neglect, as a recent visit to the home revealed an odor so overwhelming that it was detectable from outside the residence. Based upon these circumstances, the DHHR took emergency custody of the child at the hospital shortly after her birth.

During an adjudicatory hearing in August of 2016, the DHHR presented evidence that the parents had not improved the conditions in the home since the prior abuse and neglect proceedings. According to a caseworker who had recently visited their residence, the parents' home lacked a working sewer system and contained two five-gallon buckets filled with human and animal waste. The caseworker also observed molded food and used dishes cluttering the kitchen, as well as flies and gnats throughout the home. According to the caseworker, the floors were so cluttered with filth that it was difficult to walk through the home. Finally, the provider expressed safety concerns, such as a large hole in the bathroom leading to the basement and several exposed wires. The parents admitted the home was unfit for the child, though they claimed that the mother planned to live with the child in another location until such time as the home was fit. Despite this testimony, a caseworker testified that he identified a bassinet and crib in the home that had not yet been assembled. The parents also admitted that petitioner struck the mother during the pregnancy and was on probation for criminal charges related to that incident. Ultimately, the circuit court found that the parents' testimony regarding the plans for the child to reside elsewhere to be "incredible," especially given that the parents had told no one else about the plans prior to the child's discharge from the hospital and their explanation lacked corroboration. As such, the circuit court found that the parents planned to return to the home with the child, where "she would have been exposed to horrible living conditions which would have posed a significant risk to her health, safety, and welfare." Ultimately, the circuit court found that the parents neglected the child.

In September of 2016, the circuit court held a dispositional hearing. Based upon the evidence, the circuit court terminated petitioner's parental rights to the child.[3] It is from this order that petitioner appeals.[4]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

---

[3]The parental rights of both parents to the child were terminated below. According to the DHHR, the child is currently placed in a foster home with a permanency plan of adoption therein.

[4]On appeal, petitioner does not raise an assignment of error regarding the circuit court's termination of parental rights.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's adjudication of the child as neglected.

Petitioner's entire argument on this issue is premised on the fact that the child was taken from the parents while at the hospital. As such, petitioner argues that the child was not subjected to the conditions of the home because she never resided there. Accordingly, it is petitioner's contention that the child suffered no actual neglect, but instead the circuit court merely speculated as to potential harm to the child. The Court does not agree. West Virginia Code § 49-1-201, in relevant part, defines a neglected child as one "[w]hose physical or mental health is harmed *or threatened* by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, *shelter*, supervision, medical care or education . . . ." (Emphasis added). Petitioner's argument on appeal ignores the fact that the child's health was threatened by the parents' failure to provide her with necessary and appropriate shelter.

According to petitioner, the parents testified that they never intended to reside in the home with the child. However, the circuit court specifically found that the parents' testimony lacked credibility and that they planned to return to the home with the child, where "she would have been exposed to horrible living conditions which would have posed a significant risk to her health, safety, and welfare." We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). Here, the circuit court, as the trier of fact, was free to make credibility determinations regarding the parents' testimony, especially in light of the fact that the mother "admitted that she had not told anyone of this plan prior to the child's release from the hospital" and the general lack of corroboration for their claims.

We have previously held that

"W.Va.Code, 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

3

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (citations omitted). The record in this matter is clear that the DHHR established that, as of the petition's filing, the parents' home was unfit for the child and, therefore, that the parents failed to provide the child with necessary shelter. In fact, the parents admitted that the home was unsuitable for the child. As such, we find that the DHHR met its burden at adjudication by establishing that the parents' neglect constituted a threat to the child's health. Accordingly, we find no error in the circuit court's adjudication of the child as neglected.[5]

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 8, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**:  May 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[5]Petitioner raises an additional argument in support of his assignment of error concerning the circuit court's findings regarding domestic violence against the mother during her pregnancy with J.P.-1 as a basis for adjudication. Petitioner argues that the circuit court erred in relying on this evidence for various reasons, but ultimately asserts that adjudication was improper because the findings do not constitute abuse or neglect. We find that, because the allegations regarding the parents' living conditions were sufficient to adjudicate the child as a "neglected child," it is unnecessary to address petitioner's arguments concerning domestic violence.